Thank you. May it please the court. Scott Zwollinger on behalf of Scott Hernandez. This case presents obviously an issue of qualified immunity in a time when we're re-examining, the courts are re-examining, societies re-examining qualified immunity's role in 1983 claims dealing with law enforcement. I wish to start point out a couple of things that I think control and require reversal of the district court. The first is that the use of police dogs, there's nothing novel, there's nothing unique, there's nothing new about about them. This is not presenting a situation where officers are dealing with different situations they haven't before, things they weren't trained on, policies that have not long since been vetted. And I know that a lot of times when we look at the cases dealing with qualified immunity, it comes, it seems that it's the eternal search for what we all learned in law school, the case that's on all fours that tells a police officer what to do. But that's not the law, it can't be the law because eventually that will simply swallow the entire area and there'll be no redress for individuals who have their rights violated. So the use of a police dog is no different than a baton, it's no different than any of the other tools that police officers have traditionally had for years. Now the other factor that I suggest requires reversal is that this was not a fast-moving situation. It wasn't a chase. When the officers encounter Mr. Hernandez and he stops in his garage, there's no chase going on. There's no quick situation the officers have to protect other people from or protect themselves. He is stopped in his car, it is agreed that his car is off, and he poses no threat to anyone. He is effectively acting as a petulant child, refusing to exit his car, holding onto the steering wheel. The officers admit throughout the record that there's no use of force by Mr. Hernandez, no attempt to fight them, no attempt to do anything other than simply sit there and passively resist. So is your argument that it seemed in the briefing that your argument was that the officers violated your client's constitutional rights by allowing the dog to continue biting Mr. Hernandez after he surrendered? Now it seems as if you're suggesting that it was a violation of his rights to use the dog at all if he wasn't resisting violently. Are you making both arguments or one or the other? Well, your honor, yes, I think it's both. I think at first it's the use of force and, you know, going through the gram factors, which I can do and I would like to, but then it's also once he says, okay, enough, I surrender, the officer says that he holds on the dog rather than giving him the command to release the bike. At deposition, it is exerted, excerpt, excuse me, it's in the record, the officer said well he never had not, the dog had never not obeyed a command to stop biting. So the use of force, which is a severe use of force, it is a misdemeanor stop, it is someone who's clearly intoxicated and not, you know, acting in a manner that is clear in thinking, but not violent, not resisted, not trying to hurt the officers, and this is the right stop, the officer continues to allow the dog to continue to bite Mr. Hernandez, so it's both. So, okay, so I agree with you that there's Ninth Circuit case law that says the use of police dogs, it can be viewed for excessive force, but I don't know of any case law that says that if a suspect is not cooperating and in fact refusing lawful orders for minutes and minutes on end, the officers have tried to, you know, pull on him, remove him, they've tried tasing him, they've tried everything, he's been warned and warned and warned that there's a dog and they're gonna let the dog bite him, and he still doesn't comply, that that then means the use of the dog, period, was excessive force. Then there's the separate issue of whether they allowed the dog to bite him for too long. So, can you give me a case that tells me that it was clearly established law that the officers couldn't use the dog at all? So, your honor, I can't. I can't point to the case on all fours. If I could, it would be in my brief. I acknowledge that, but what you just expressed respectfully is a factual determination. We're talking about eight minutes. We're not talking about, and you know, there's a view and the defendants, the police would like to... But, Mr. Zwillinger, there's a video that's in the record that we've seen and that the district court saw as well, and there's case law that says when there's a video, the court is not required to believe the suspect's contrary testimony. I mean, we can watch the video, which we all did, and watch this go on for over eight minutes. Well, I understand that, your honor. I don't disagree with that, but this deciding that eight minutes in and of itself becomes, okay, that's long enough. Now we can go to a severe level of use of force, that in certain circumstances can approach deadly force, is a factual determination in and of itself. Your argument on the use of the dog seems to go to the Fourth Amendment question, and I thought you were here on the qualified immunity question. There could be a violation of the Fourth Amendment, but if it's not obvious to the officers, they're going to get qualified immunity anyway. So, are you here on both questions or just the qualified immunity question? Because this panel, just to make clear, I want to make sure I know what you're asking the panel, because this panel could reach out and decide the Fourth Amendment question, and still find the officers had qualified immunity. So, what are you asking for? Apologies for interrupting. Well, first off, to answer your second question first, if the panel is inclined to find qualified immunity, I do ask that you establish the law, because I think all too often what happens in these cases is that the second question gets answered, and then the law never gets advanced. So, at a minimum, we are. But where's the line? So, the line is that I get that it cannot be generalized, but this is the use of force of a nothing novel, of a tool that officers have had for years. And when we look here, there's a policy violation. So, when I go back to Tovey Gates and Mendoza, and I acknowledge that those cases have broad pronouncements, that the law is clearly established, and appellees are going to get up and say, that's years before the Supreme Court told us to look for more detail. But when we look at Tovey Gates, it talks about a policy violation, and the LAPD had a policy in place. Here, what we know is that this officer was found to have violated the policies of the City of Gilbert. The policy is Gilbert's business, unless the policy and the Fourth Amendment are coextensive. Right. And here they are. Here, the policy of the City of Gilbert was that it expected officers to use force in conjunction with the Fourth Amendment, looking to the standards, the GRAM standards, the four that are out there. And when we start going through each one of those standards, it's apparent that this is a case where the use of force was excessive. Not every case requires it on four. There are cases that talk about obvious... So, Mr. Zunzer, when I asked you about where the line was, your response to me, which I wrote down, was, well, the cases cannot be generalized. Now, if the cases can't be generalized, I don't know how I get a hard line. I thought a line might be out of two, might be if a defendant or the accused is obviously surrendered, then the dog can't be sicked on him. And that might be a bright line. I'm not sure that works in your case, but that might be a bright line. But I don't know what line you're asking for. Okay. That bright line doesn't apply to this case. It applies to this, at least to the first part of this case. It does apply to the second part when they continue the bite after he says, that's enough. I'll get out. But when we look at the use of force here, there's, you have to, at some point, decide that it's so obvious. You have a misdemeanor stop, someone who's not aggressive, who is not armed. They know he isn't armed. Counsel, I'm having a problem with your characterization of the evidence, which is not borne out by the videotape. It is clear to me that he did not surrender when the dog was brought into the car. And even after they removed the dog, he still refused to come out. And he was still holding on to the headrest and refusing the officer's orders to get out. So how can you characterize the evidence as saying he had surrendered when the video shows that is not true? Well, respectfully, his statements were, I give, it's enough. We're using a severe amount of force. They don't give him an opportunity to get out of the car. Counsel, his actions belie his words. That's what the video shows. And I don't think there's any question in my mind that he had not surrendered or basically agreed to the arrest. To the contrary, he was continuing to insist that the officers had no right to arrest him or even be inside his garage. Right. I understand that. And obviously that's not the, well, his actions were not here to say that they're justified in terms of, you know, you don't have the right to be in my garage. You know, I just get to close my garage and go home. I'm not, I'm not suggesting that. But when, But if at that point the officers had probable cause to arrest and he was not acceding to be and to overcome what you call passive resistance. Absolutely. The reasonable force. But this is not, this is on the continuum of force. We talk about the crimes he was facing, all the factors. This is not reasonable. This is a severe amount of force that could cause severe injury. That's not proportional to the situation that was presented to these officers. Well, the danger, we're running out of options. I mean, I mean, they tried to pull him out and that didn't work. They, you know, they tried control holds on him. Those didn't work. They tried pain compliance. That didn't work. And then they introduced the dog and even the dog didn't work at that point. I'm not quite sure what is left to a reasonable officer in that case. Your Honor, how about, how about time? I mean, again, I go back to, I understand that, that officers would like to him to comply immediately. And in a perfect world, he should have complied immediately. And I would say he should have complied immediately. But again, we're talking about a relatively short period of time. A man who's intoxicated, they know he's not thinking straight, obviously. And they don't, they could take the time to talk him out. They're not presented with the situation that there's a danger to them or other members of the public. And so at a minimum that when you, when you, when you start going through the factors, that should have been something they tried to continue to try to talk him out of it. They could have consulted with a sergeant. The evidence below was that this officer had an opportunity to consult with the superiors and he did not before using the dog. Was there evidence that the officers concluded that he didn't present a danger? I mean, they had followed him in his car. He went into the garage. He stopped the door from closing. One officer was standing by the driver's side of the door, speaking with him, trying to encourage him to come out. Another officer was trying to get his dog who was running around barking. Um, but I didn't see anything that suggested that they had been able to pat it down or search him or search the vehicle or that they had any way of knowing whether he was armed or had a weapon nearby in the vehicle. Uh, his hands were on the, on the, um, the steering wheel and they acted like they knew that he was unarmed and did not pose a danger in those close quarters. If they thought he was armed, they weren't going to get up that close to him. Um, but they got in there. They had an opportunity. They could see his hands. They could see the area in front of him. He didn't have access to the garage or anything that, you know, places that weapons could have been hidden. Um, so that he could have a weapon on his waistband. He could have a weapon on the waist, his waistband at his back. He could have a weapon in the console. He could have a weapon in the glove compartment. The situation's, uh, not static. I mean, this is a fluid situation. So they're interacting with him. Uh, it's somewhat perilous. They don't really know. I mean, they know they've got an intoxicated person, a pretty big guy who's not cooperating. And at any time then, because they hadn't been able to establish that he wasn't a threat or that he wasn't dangerous, he could have reached somewhere and retrieved a weapon. So what you're suggesting is that they should just, this should just go on. I don't know for how long it was over eight minutes, some indefinite period of time. The officers try to coax him out. I mean, maybe they wait until he passes out and then they remove him from the car. I mean, I I'm having problem with, with this line drawing as well and what it is that we're, what it is that they did that violated his rights. But officers can simply assume that he's armed because they can't affirmatively a hundred percent pin down that he isn't armed. Then the use of forces, any use of forces justified at that point, these officers had made the conclusion that he wasn't armed, didn't pose a danger. And that's evidenced by their behavior of going up next to him, trying to gun him in front of his car. If they thought he was a danger, they would have stepped back and protected themselves, you know, either behind their own cruiser doors or something of that nature. They approached him with their weapons drawn. They had their weapons drawn. I mean, they, they were not approaching him like he was, you know, a docile flower sitting there. I mean, they were, they were aware of potential personal danger. And I would assume an officer always assumes the suspect is armed until they can establish that they're not. I mean, otherwise they're going to be dead. Well, they then put their weapons away. They reach in, they interact with them. They can see his hands. They can see what he's, what he's doing. Again, his, his hands are not on the steering wheel in one of the cases. And I, and I can give the name it's in our brief. The, the, the criminal had his hands in his waistband. He was hiding his hands in his pocket, suggestive of some weapon or something there. This is different. Mr. Hernandez's hands are up here and the officers could see them. I have 30 seconds left if I may reserve. Of course. Thank you. Thank you. Mr. Grasso whenever you're ready. Thank you, your honor. Good afternoon, your honors. Robert Grasso. I represent officer Steve Gilbert and the town of Gilbert. And to be clear about that, there is no Monell claim in this particular case. It's only a claim against officer Gilbert. And as the district court, as I was getting ready for this oral argument, I was trying to find an easy way to kind of hone the issue. In this particular case, we moved for partial summary judgment based on the second prong of the qualified immunity analysis. We did not move on the first prong. And as the district court correctly pointed out, the US Supreme court has stressed the need to identify a case where the officer under similar circumstances has violated the fourth amendment. And sometimes you'll see in the opinions that sentence is read sometimes quickly, but it's important that there's two pieces to it. You have to have a case where there are similar circumstances and the case has found that the officer violated the fourth amendment. The courts have found and the Supreme court has admonished that only in that circumstance can it be said that the law is clearly established such that an officer would know the conduct was prohibited. In this particular case, your honors, the plaintiff, Mr. Hernandez, offered three cases to the district court to analyze, to support this position that the law was clearly established for a fourth amendment violation. None of the cases meet either of the prongs. The first case, Mendoza versus Block, although it's factually dissimilar and we can go through all of that, the easy answer with Mendoza is the court found that the conduct was objectively reasonable. So no officer in officer Gilbert's position is going to look at that opinion because there is no fourth amendment violation. So Mendoza versus Block can be put to the side. The next case they rely upon is Watkins versus the city of Oakland. Again, as the district court properly pointed out in its opinion, the facts are not, it's dissimilar, it's a dog searching and locating a hiding suspect, but this is what's important. In that case, the court expressly, the ninth circuit expressly limited its review to whether or not officer choose conduct was clearly established. It's on page 1092 of the ninth circuit's opinion. At no time did the ninth circuit find a fourth amendment violation and that's required. You have to have a case, remember, as the Supreme Court said, with similar circumstances or facts where a fourth amendment violation was found. There was no fourth amendment violation found in Watkins versus city of Oakland. Wait, in Watkins, wasn't officer Chu found, didn't we say that he did not have qualified immunity? We said it back, I think, didn't we? This was just a simple denial of qualified immunity. If you look at page in Watkins versus city of Oakland, it's on page 1092, your honor, it's where head notes nine and 10 are. It talks about how the review was limited to whether it violated clearly established law. There was no express finding in this opinion by the ninth circuit that the use of the canine in that case violated. They affirmed the district court's denial of qualified immunity. Correct, your honor, but there was no express finding that there was a fourth amendment violation. I think that they did that because there was a conflict in the evidence. They had to assume, we had to assume the victim's set of circumstances and on that basis said, number one, it would have to be a violation of the fourth amendment because otherwise there'd be no reason even to get to the qualified immunity question. I understand your honor, but I think for purposes of what the Supreme Court has been guiding is when you have officers who have to rely on precedent. If he had these cases sitting in his back pocket and had the time and luxury to actually review them that night, the question is, would this issue be beyond debate? When you look at this court's holding in Watkins, the most that you get from it is that the quote is improper encouragement and of the fourth amendment rights, but there is no express pronouncement that the specific circumstances of the case would trigger a fourth amendment violation and according to the Supreme Court. I've got that page open. I don't understand your analysis. The court there is assuming that Watkins version of the facts is correct and if Watkins, which the jury is going to have to if Watkins is correct and the jury agrees with them, then there is a violation of the fourth amendment that is obvious and for which the officers are not entitled to qualified immunity. Your honor, I think what I'm trying to say is that in this particular circumstance, the ninth circuit's pronouncement on that issue, setting aside the dissimilar facts of the case was only that this extended duration of the bite and the continuation of the attack, which isn't defined by the ninth circuit, could constitute an excessive force violation and I believe the case... And that was why we sent it back, right Mr. Grosso? In order to resolve the factual determination as to whether the defendant had surrendered at the time the dog continued to bite. Here we know that the defendant had not surrendered. Yes, your honor. And that's the same theme that you get in the other case, the Coyster case, which came out a couple of years after, that's the last one the plaintiffs rely upon, a couple of years after this incident, but it's just merely analyzing that same precedent for those same issues. And what you can only glean from that is in certain circumstances, I think there was a clear example, if a suspect is handcuffed, completely helpless, completely surrendered, then in that circumstance, that would be a clear pronouncement and an officer should know that. That's not the facts of this particular case. When you're dealing with a suspect who has... He's completely intoxicated. He's driving, fleeing from the police. The police tried literally, I think there's no less than three dozen orders to get out of the car. They tried every version of a control hold that you can possibly think of. They tried pepper spray, nothing worked. I mean, and then finally, after warning him that the dog was going to come in, they send the dog in. And even then, the dog's not working. He's still fighting him. And it took two fully grown, large police officers after the bite to pull him off the headrest. Now, Officer Gilbert... As Mr. Zwillinger argues that when Mr. Hernandez said, I think his actual word was, all right. I think he said, all right, all right, all right. You can hear him yelling, all right, as the dog's biting him. If we were to conclude that he was surrendering at that point, would there then be a Fourth Amendment violation? I mean, you don't think it's clearly established law that if somebody is surrendering, you can't keep having a dog bite him? Your Honor, no, I do believe. And that's not the basis from which we requested summary judgment. And we're granted summary judgment from the district court. That was one of the reasons we didn't move for summary judgment on that prong, because I didn't think it was going to end up leading to certain factual disputes and issues between Mr. Hernandez and the officers that may not lend itself for summary judgment. But what I believed was perfectly clear is the case law in this area did not have... There's no case with similar circumstances where a Fourth Amendment violation was found. And for that, that's the sole reason we moved for summary judgment. And that's why we focused on the second prong. And this is significant as well, Your Honor. Mr. Zwillinger, I want this to be clear in the record, so there's no confusion. This issue about that Gilbert found a policy violation, this is very important. And I'm going to cite you to the record. It is excerpts of record I, pages 51 to 52. The excerpts that Mr. Zwillinger references talking about how he thinks they found that Officer Gilbert did something wrong, it's quite to the contrary. What the Gilbert Police Department found was that it may need to revisit its policy on canine use of force based on existing precedent and just updating the policy. The pages reference expressly state that the officer cannot be held accountable for the lack of specificity in the canine policy. And then it talks about the canine policy. And on page 52 of that excerpt of record, talks about how the policy for the canine program says that the officer can use the canine for the protection of the handler, other officers and citizens when reasonably necessary for the accomplishment of law enforcement goals. And that's why they didn't find that Officer Gilbert did something wrong. To be clear, there's no Monell claim here. So to the extent Mr. Zwillinger is trying to make some sort of a policy violation, it's not going to exist here because there is no Monell claim. And in that same situation, when the record shows that Officer Gilbert relied on the case of Strickland v. Schatz, which is a case that's more analogous on the facts because you're dealing with a non-compliant intoxicated subject who fought with the officers. And during the internal investigation, if that's in the record, your honors, at excerpts of record J at pages 101 and 102, Officer, immediately after this happened, when he was submitting to the internal investigations, he told them that he was relying upon the precedent set forth in Strickland v. Schatz because it more closely matched the circumstances this officer was confronted with. So when you step back here, the real question is this, and the district court framed it absolutely correctly at the beginning. The question here is, did established law prohibit Officer Gilbert from using K-9 Murphy as he did in this particular case? And based on the existing precedent, if Officer Gilbert had all these cases in front of him, Mendoza v. Block, which finds it objectively reasonable to use the dog in a different circumstance, but circumstances where the Officer Gilbert could certainly rely on that case to find that his conduct was appropriate. If you look at the Watkins case, it does not clearly tell Officer Gilbert he couldn't, it didn't, because of the factual circumstances are just different. Then when you look at Strickland v. Schatz, which is almost identical from a factual standpoint because the guy's intoxicated, struggling, fighting with the officers, and they use the dog to subdue him. Incidentally, in that case from the they went straight to the dog. They didn't do what these officers did, which I think is meaningful, and we've been trying to flush that out a little bit. This is not like the officers just showed up with a dog that day to attack Mr. Hernandez. That's preposterous. These officers were in tight quarters in a very small garage. They had immediately told him to get out of the car. He clearly was not going to follow their orders. There were three dozen orders to get out of the different physical force, and he actively resisted. To call this passive resistance is not fair. He anchored himself in the car. The car hadn't been searched. He hadn't been searched. What's going through the mind of these officers? If this guy's just drinking and driving and weaving in traffic, why doesn't he just get out of the car? To a reasonable police officer that needs to go home that night and worry about his safety, what is it about this guy where he won't simply just step out of the car? Not only will he not step out of the car based on a verbal command, we're trying pain holds. We're trying control holds. We used pepper spray on him, and the best he can do is look at the officers and say, dudes, I'm going nowhere, and continue to fight with them. Then even after we have the dog deployed and he gets bit by the dog, we still can't get him to get out of the car. It takes two grown officers to pry him away. Without question, these are pretty unique factual circumstances. This man presented a significant safety risk to these officers. The district court found that in conjunction with denying the plaintiff's motion for summary judgment on the Fourth Amendment issue. I think the district court got that exactly right. But the district court quickly went to the qualified immunity analysis, the second prong, and found that at the time this happened in May of 2016, there was no clear binding precedent that would have told officer Steve Gilbert that his actions were unconstitutional. Under the Supreme Court's specificity requirement in COISTRA and all the recent Supreme Court cases, that's required. So it does. It goes back to the simple fact. How do you respond to Mr. Zwillinger's argument, which I think is well taken, that the law can never become clearly established? Essentially, if you have to find this case on all fours, you can't develop the law. How is the law supposed to be developed in these circumstances? I think it can, Your Honor. I think they did give some clear examples. I think the Ninth Circuit did as well. I think there are examples where, say, a suspect is handcuffed, completely helpless after he's completely surrendered. If somebody decides to release the canine at that point, to use force on that person when they don't present a danger to anyone and they're under control and they're in handcuffs, that's clear. And I think the case law can also evolve. I don't agree that case law can't account for certain circumstances and evolve based on how we know of force escalation and things like that work. There's been plenty of cases in the Ninth Circuit with different uses of force, with firearms, with batons, that cover all of those. Canines are really no different than that. They're a tool that are used by law enforcement when it's necessary to exuse force and when lethal force does not want to be used. Like in a case such as this. Taser's another example. There's been plenty of precedent where the court has honed in on that and people can show that something may violate clearly established law. All right, thank you. So we are almost 45 seconds over, unless my colleagues have any questions. Well, thank you for your argument this afternoon. Thank you. All right, Mr. Zwillinger, you wanted to reserve three minutes, but I think you only have 30 seconds. So I'll give you a minute. So you have a minute 30. Thank you, I appreciate that. I really will be very quick. I just want to make a couple of quick points in response to Mr. Grasso. First off, I do agree there is no mental no no claim here. There was a state law claim for failure to train and those types of claims that's been remanded down to superior court. So that's not before you. That's where that part of the case was. In addition, I think that he misstates the finding in relation to Officer Gilbert, because it does say that it is that he needed to be reminded and that it is not a recommended tactic to utilize the police canine. The other point is he just pointed out that there is nothing different about a dog. We agree there. This is a baton. This is a very well established tool. And simply because there is not a case on for at some point, the use of force in this type of situation is so obvious that there doesn't need to be a case on force. But finally, and I guess I do think it's important that even if this court finds that the law is not clearly established, that the law be developed to the extent that that would have to go to the district court. I think that this court can do that because the parties work together to stipulate to the facts you've been provided the video. So at a minimum, with the circumstances these officers were presented, I would ask that you establish the law so that in future situations, officers are not permitted to use a severe amount of force on a misdemeanor stop in a situation when other tactics, including waiting for time, may have been more appropriate. So you want us to declare that the dog should not have been deployed at all under any circumstance? No, you're not under any circumstances. But in these circumstances, when we go through each of the grim factors, in particular, the type of crime and the threat that he posed sitting in his garage with his car off and without access to anything and without any evidence. But it seems to me that the officers did go through sort of an escalating level of that they didn't do is that they didn't use a baton and physically strike him with that, nor did they use a taser. I don't know what other options were available to him at that point. Well, I would suggest that this eight minute fact is not, it's not a suggestion that that eight minutes is enough or some particular timeline. I would also suggest that they had an opportunity to consult with superiors and figure out what their options are. Maybe we're doing things of those nature, but simply going, okay, we've, we've tried each of our levels. Now, let a dog out when we're dealing with someone on a misdemeanor, to me, violates the fourth. But he's still in the car with the car keys and the garage door is open, right? So I don't know if the car was running at this point or had it been turned off. It was off. I mean, he could have restarted the car and backed out of the garage, I suppose. Well, they were conferring about what to do. The cruisers were blocking him so he couldn't have, you know, backed out and to, yeah. Okay. Thank you for the additional time. What should the officers have done? I mean, you've said they should consult with superiors. That doesn't feel like a very satisfactory thing.
judges: Tallman, Bybee, Bade